# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TAYLOR CARLISLE, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 16-3767** |
| **NEWELL NORMAND, ET AL.** | **SECTION: "H"(1)** |

## ORDER AND REASONS

Before the Court are three Motions: A Motion to Dismiss filed by Defendant Joe McNair (Doc. 58); a Motion to Dismiss filed by Defendants Richard Thompson and Joseph Marino (Doc. 59); and a Motion to Dismiss filed by Defendants Kristen Becnel, Tracey Mussal, and Kevin Theriot (Doc. 71). These Motions are **GRANTED IN PART** as outlined herein.

## BACKGROUND

In this suit, Plaintiffs challenge the manner in which the Jefferson Parish Drug Court is conducted. In addition to their individual claims, they seek to represent a class of individuals who were similarly sentenced by the Drug Court. The Court will begin by outlining their individual claims.

1

# I. Taylor Carlisle

Plaintiff Taylor Carlisle was arrested on November 9, 2012 and charged in the 24th Judicial District Court for the Parish of Jefferson with possession of oxycodone in case no. 12-6158 and with possession of marijuana and drug paraphernalia in case no. 12-6159. On January 30, 2015 he entered a guilty plea as to all charges. In case number 12-6159 he was sentenced to time served, while his plea in case number 12-6158 was entered pursuant to Louisiana Revised Statutes § 13:5304, also known as the "Louisiana Drug Court Statute." He was sentenced to 0-5 years, with the sentence deferred contingent upon his completion of the Jefferson Parish Intensive Drug Court Program while on probation. As part of this program, Carlisle was required to maintain regular contact with the program probation officer and the drug court, attend regular AA meetings, consent to regular drug testing, and present required documentation to the probation officer and the drug court. He also agreed to waive due process rights in Drug Court proceedings.

His primary claim involves allegations that he received excessive sentences from the Drug Court for failure to comply with the terms of the program. On April 28, 2015, he was sanctioned to 90 days flat time. Later, on August 25, 2015, he was sanctioned with six months of flat time for contempt of court when he failed to appear for a hearing. Carlisle brings six claims relative to his experience at Drug Court, essentially averring that the closed courtroom, lack of court reporter, and lack of adversarial proceedings violate his due process rights. He also alleges that these sentences were in excess of those permitted under the state law authorizing the Drug Court and that they are impermissible "flat time" sentences. He argues that this is violation of the Eighth Amendment's protections against cruel and unusual punishment and

2

the Equal Protection Clause of the Fourteenth Amendment. First, he seeks declaratory and injunctive relief prohibiting the Drug Court from acting in this unconstitutional manner. Second, he brings a § 1983 claim against Sheriff Normand for deliberate indifference in keeping Carlisle in jail for the 90 and 180 day flat time sentences, in violation of Louisiana law and his Equal Protection and Due Process rights. Third, he brings a § 1983 claim against Drug Court Administrator Kristen Becnel, Program Supervisor Tracy Mussal, Probation Coordinator Kevin Theriot, and Director of Counseling Joe McNair for failure to properly train and supervise the implements of the Drug Court policy.

In addition to these constitutional claims, he brings "pendant state law claims" against several individuals. First, he brings a legal malpractice claim against the Drug Court's Indigent Public Defender Board and its staff attorney, Joe Marino. Mr. Marino was appointed to represent Carlisle in Drug Court, and Carlisle contends that he breached his duty by failing to appropriately defend Carlisle. Second, he brings a claim against Drug Court Clinical Director Joe McNair for breach of his duty as a therapist. He avers that McNair owed him a duty to act within the standard of care governing the treatment of patients with substance abuse problems and that he breached that duty by failing to make proper recommendations as to his treatment.

## II. Emile Heron

Plaintiff Emile Heron has been a participant in the Drug Court Program since April 17, 2012. He pleaded guilty to one count of possession of oxycodone. He alleges that he has suffered periods of detention for technical violations of his probation without procedural due process.[1] On July 30, 2013, he was

---

[1] This is despite the fact that he signed a waiver of due process rights.

sentenced to 24 hours flat time for failing to complete required community service. He next alleges that, on November 12, 2013, he was sentenced to 30 days flat time for "associating with a felon" despite having never committed that offense. On January 14, 2014, he was sanctioned with 60 days flat time for failing to appear at Drug Court on January 3, 2014. He further avers that he was held for an additional four and a half months at the end of this sentence while waiting for a Long Term Care bed to become available. Eventually, he was sent to Assisi Bridge House in Shreveport for seven and half months of inpatient treatment. Upon release, he was again sanctioned for noncompliance and sentenced to 16 hours of community service due November 18, 2014. It seems that he failed to complete this community services and was therefore sentenced to 48 hours in the Jefferson Parish Correctional Center on December 2, 2014. On February 5, 2015 he was held in contempt for failure to pay $1,624.50 in fines from the original plea agreement. He was later jailed on December 15, 2015 for failure to complete community service. He alleges that he was held until January 26, 2016, at which time he was sanctioned with 6 months' time. He alleges that all of these sanctions were imposed without hearing, a court reporter, or formal notice in violation of due process. He also alleges that, while he was incarcerated, his probation was extended by motion without his knowledge.

### III. Class Allegations

Plaintiffs also seek certification of the following class:

Those individual natural persons who, while participating as probationers in the 24th Judicial District Court Drug Court program pursuant to Plea Agreement (hereinafter the "probationers") have been sanctioned, for alleged probation infractions and sentenced with jail time in the Jefferson Parish Correctional Center or other location, in excess often days as

4

proscribed by LA Code Crim. Proc. 891(c). and/or in violation of the Drug Court Act, R.S. 13:5304 et seq. These probationers include but are not limited to those sentenced to "flat time" in connection with said sanctions, as well as those who are alleged to have committed Contempt and sentenced to jail time without a hearing or opportunity to defend, or without a record from which to launch an appeal based on Due Process waivers executed at the time of the Plea Agreement.

Plaintiffs aver that all of these individuals were subject to a pattern and practice of conduct whereby they were deprived of liberty under color of state law. They aver that the subject class may consist of more than one thousand individuals and that their claims involve common questions of law and fact.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[2] A claim is "plausible on its face" when the pleaded facts allow the court to "[d]raw the reasonable inference that the defendant is liable for the misconduct alleged."[3] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[4] The Court need not, however, accept as true legal conclusions couched as factual allegations.[5]

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[6] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'"

---

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[3] *Id.*

[4] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

[5] *Iqbal*, 556 U.S. at 667.

[6] *Id.*

5

will not suffice.[7] Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim.[8]

## LAW AND ANALYSIS

The Court will address each of the three pending Motions to Dismiss in turn.

**I. Motion to Dismiss filed by Defendant McNair (Doc. 58)**

The first Motion to Dismiss was filed by Defendant Joe McNair, who served as the Drug Court clinical director while Carlisle was in Drug Court. The Complaint alleges that McNair, as an administrator of the Drug Court, is liable for "deliberate indifference" in failing to properly train and supervise the implementation of Drug Court policy, leading to violations of Plaintiff's constitutional rights. It further alleges a pendant state law negligence claim against McNair for breach of his duty to Carlisle as a therapist. McNair avers that he should be dismissed from this action for the following reasons: (1) there is no therapist/patient relationship between Carlisle and McNair; (2) there is no casual connection between McNair's alleged negligence and the alleged deprivation of Carlisle's rights; (3) the deliberate indifference claim against McNair is barred by qualified immunity; (4) the allegations do not meet class action requisites set forth in Federal Rule of Civil Procedure 23; and (5) Heron asserted no cause of action against McNair. The Court will address these arguments in turn.

---

[7] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).
[8] *Lormand*, 565 F.3d at 255–57.

### A. Existence of a Therapist/Patient Relationship

McNair first argues that the pendant negligence claims asserted against him should be dismissed because there are no facts alleged in the Complaint and Amended Complaint from which the Court could find that a patient/therapist relationship existed. The factual allegations against McNair are contained in paragraphs 62 through 65 of the Complaint. Therein, Carlisle alleges that McNair served as the Clinical Director of Drug Court and recommended Carlisle for the program. He alleges that McNair evaluated him for program eligibility and that he owed a duty to properly evaluate Carlisle throughout the program. He alleges that McNair failed to make appropriate recommendations relative to his treatment throughout the program. The Court finds that these allegations are insufficient, even if taken as true, to establish a patient/therapist relationship. Accordingly, the negligence claims against McNair are dismissed without prejudice.

### B. Causal Connection Between McNair's Negligence and Deprivation of Rights

McNair next argues that Plaintiffs' "deliberate indifference" claims must fail because there are insufficient factual allegations to show that he was causally connected with the due process violations allegedly stemming from excessive sentences imposed by the Drug Court. "When, as here, a plaintiff alleges a failure to train or supervise, the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to

deliberate indifference."[9] The Complaint broadly alleges that he and the other Drug Court administrators failed to properly supervise the implementation of Drug Court policy, leading to unlawful sentences imposed in violation of due process protections. The ultimate decision-making power relative to these sentences, however, rested with the judges administering the program.[10] Indeed, the Complaint does not identify subordinate officials whom McNair failed to train or supervise. In fact, quite the opposite, it appears that the complained-of sentences were imposed by the drug court judges, who clearly served as McNair's supervisors in the program.[11] Because the Complaint fails to allege a causal connection between any alleged failure to train or supervise and the deprivation of a constitutional right, Plaintiffs' deliberate indifference claims against McNair are dismissed without prejudice.

### C. Qualified Immunity

McNair next avers that he is entitled to qualified immunity from suit for damages in his personal capacity on any § 1983 claim. Plaintiff responds, arguing that (1) as a private contractor he is not entitled to qualified immunity and (2) that the alleged violations amount to violations of clearly established law. The Supreme Court has previously held that medical professionals contracted to work part time with the state act under color of state law when treating individuals as part of the terms of their employment.[12] Accordingly, McNair is permitted to assert qualified immunity as a defense. In *Saucier v. Katz*, the Supreme Court promulgated a two-step analysis to determine if an

---

[9] *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005)
[10] The judges have not been made party to this suit.
[11] La. Rev. Stat. § 13:5304.
[12] *West v. Atkins*, 487 U.S. 42, 56 (U.S. 1988).

official has stepped outside the bounds of qualified immunity.[13] Under that test, the initial inquiry is whether the Plaintiff has alleged a constitutional violation.[14] If established, the next inquiry is whether the defendant's conduct was objectively reasonable in light of clearly established law at the time the conduct occurred.[15] In *Pearson v. Callahan*, the Court retreated somewhat from this rigid two-step inquiry, giving courts leave to decide which prong to consider first.[16] Plaintiff argues that the procedural due process rights violated by Defendants are clearly established, however, it is undisputed that Plaintiff signed a waiver of his due process rights prior to participating in the Drug Court program. To evade qualified immunity, Plaintiffs would have to demonstrate that the invalidity of the due process waiver was clearly established. They have not done so. Accordingly, in light of the due process waiver, Plaintiff cannot establish that McNair's actions violated any clearly established constitutional right. He is therefore entitled to qualified immunity from suit in his personal capacity as to all claims for damages arising under § 1983. Accordingly, all § 1983 claims for damages against McNair in his personal capacity are dismissed with prejudice.

**D. Class Allegations as to McNair**

McNair next argues that the class allegations against him are insufficient because the class action allegations of the Complaint are devoid of any allegations specific to McNair. Plaintiff avers that this attack on the class allegations is premature, as he has not yet moved for class certification. This argument is unavailing. Class actions are governed by Rule 23 of the Federal

---

[13] 533 U.S. 194, 201 (2001).
[14] *Id.*
[15] *Id.*
[16] 555 U.S. 223, 236 (2008).

Rules of Civil Procedure. "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"[17] In order for an action to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, each of the four prerequisites of Rule 23(a) must be satisfied.[18] Additionally, one of the three conditions of Rule 23(b) must be met by all proposed classes.[19] Ultimately, a "[d]istrict court maintains great discretion in certifying and managing a class action."[20]

Courts have routinely applied Rule 23(d)(1)(D), formerly Rule 23(d)(4), to actions where a party seeks to strike class allegations because plaintiffs have not met the requirements of Rule 23.[21] A court may strike class allegations under Rule 23 where a complaint fails to plead the minimum facts necessary to establish the existence of a class.[22]

The Court has reviewed the factual allegations of the Complaint and the Amended Complaint and finds that no facts have been asserted to support a class action against Defendant McNair. Plaintiff has not alleged that any individual other than Plaintiff Carlisle was treated by McNair as part of the Drug Court program. Accordingly, Plaintiff has failed to plead common questions of law and fact relative to this Defendant. Accordingly, Plaintiffs' class allegations as to Defendant Joe McNair are stricken.

---

[17] *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011) (*quoting Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).

[18] Fed. R. Civ. P. 23.

[19] *Id.*; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

[20] *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 478 (5th Cir. 2001) (quoting *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (quotations omitted).

[21] *Markey v. La. Citizens Fair Plan*, No. 06–5473, 2008 WL 5427708, at *1 (E.D.La. Dec. 30, 2008) (citations omitted).

[22] *Aguilar v. Allstate Fire and Cas. Ins. Co.*, No. 06–4660, 2007 WL 734809, at *2 (E.D.La. Mar. 6, 2007).

### E. Allegations as to Heron

McNair finally argues that Heron has asserted no claim against him. Plaintiffs respond, arguing that Heron has adopted the allegations of the Complaint relative the McNair's conduct. The Court has reviewed both the Complaint and the Amended Complaint and finds that Plaintiffs have plead no facts to support a cause of action against McNair as asserted by Plaintiff Heron. Accordingly, such claims are dismissed without prejudice.

## II. Motion to Dismiss filed by Marino and Tompson (Doc. 59)

Plaintiffs bring a state legal malpractice claim against District Defender for the 24th Judicial District Richard Tompson and Joseph Marino, who served as Plaintiff Carlisle's counsel in Drug Court. Marino and Tompson argue that this claim should be dismissed because (1) it does not fall within the Court's supplemental jurisdiction and (2) even if it does fall within the Court's supplemental jurisdiction, the allegations of the Complaint and Amended Complaint are insufficient to support a legal malpractice action. The Court will address these arguments in turn.

### A. Whether the Claim falls within the Court's Supplemental Jurisdiction

Marino and Tompson argue that there is no supplemental jurisdiction over the malpractice claims asserted against them. In pertinent part, 28 U.S.C. § 1367 provides as follows:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article

> III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

"The question under section 1367(a) is whether the supplemental claims are so related to the original claims that they form part of the same case or controversy, or in other words, that they 'derive from a common nucleus of operative fact.'"[23]

Defendants Marino and Tompson argue that the federal question claims in the Complaint involve the formation and application of Drug Court policies and practices that violate due process under the Eight and Fourteenth Amendments. They argue that the malpractice claims are divorced from these federal question claims in that they involve only whether the defendants breached their duty of care. This argument misapplies the applicable standard in determining whether supplemental jurisdiction exists. The claims need not share the same legal theory; rather, "[a] loose factual connection between the claims is generally sufficient."[24] Additionally, "[a] court's determination of whether to exercise supplemental jurisdiction is guided by considerations of judicial economy, convenience and fairness to litigants."[25] The Court finds that the alleged malpractice claim falls within the same common nucleus of operative fact as the federal constitutional claims. Indeed, they arise out of the same Drug Court meetings as the constitutional claim and include allegations that these Defendants allowed the complained-of constitutional violations to continue unabated despite their duty as counsel to Plaintiffs.

---

[23] *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966)).

[24] *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, No. 10-4505, 2012 WL 195533, at *3 (E.D. La. Jan. 23, 2012).

[25] *Id.*

Accordingly, these claims form part of the same "common nucleus of operative fact" and fall within the Court's supplemental jurisdiction.

In their reply brief, Defendants for the first time argue that the Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). This argument is not properly before the Court, as arguments cannot be raised for the first time in a reply brief.[26] Nevertheless, the Court finds that no exceptions circumstances exist that would cause it to decline to exercise supplemental jurisdiction over this matter.

**B. Sufficiency of Legal Malpractice Claims**

To establish a prima facie case for legal malpractice, a plaintiff must prove there was an attorney-client relationship, the attorney was guilty of negligence in his handling of the client's case or professional impropriety in his relationship with the client, and the attorney's misconduct caused the client some loss or damage.[27] When the attorney's performance falls below the standard of competence and expertise usually exercised by other attorneys in handling such matters, the attorney is liable for any damage to the client caused by his substandard performance. "The proper method of determining whether an attorney's malpractice is a cause in fact of damage to his client is whether the proper performance of that act would have prevented the damage."[28]

Defendants argue that Plaintiff must present proof of innocence or exoneration in order to pursue a legal malpractice claim. They do not, however, point the Court to any Louisiana case adopting this rule. Indeed, it appears

---

[26] *Spencer v. Hercules Offshore, Inc.*, No. 13-4706, 2014 WL 1612440, at *4 (E.D. La. Apr. 22, 2014).
[27] *See Prestage v. Clark*, 723 So.2d 1086, 1091 (La. App. 1 Cir. 1998), writ denied, 739 So.2d 800 (La. 1999).
[28] *Schwehm v. Jones*, 872 So. 2d 1140, 1143 (La. App. 1 Cir. 2004).

that such a rule has not been expressly adopted in Louisiana.[29] Accordingly, the Court declines to adopt such a rule here.

Even if the Court does not apply the proof of innocence standard, Defendants argue that Plaintiff has alleged insufficient facts to show that their conduct has caused the complained-of damage. With regard to Defendant Marino, Plaintiff alleges that he served as lawyer in the Drug Court and failed to object to the various constitutional and state law violations that took place therein, causing him damage. The Court finds that these allegations are conclusory and fail to establish causation. Accordingly, the malpractice claims against Defendant Marino are dismissed without prejudice.

With regard to Defendant Tompson, the Complaint is entirely devoid of any factual allegations sufficient to support a legal malpractice claim.[30] Accordingly, the legal malpractice claim against him is dismissed without prejudice.

**III. Motion to Dismiss filed by Becnel, Mussal, and Theriot (Doc. 71)**

The final Motion to Dismiss was filed by Drug Court Administrator Kristen Becnel, Program Supervisor Tracey Mussal, and Probation Coordinator Kevin Theriot (collectively, the "Drug Court Administrators"). They argue that the claims asserted against them should be dismissed on the basis of absolute judicial immunity, or alternatively qualified immunity. These Defendants also adopt McNair's Motion with regard to the sufficiency of the class allegations. The Court will address these arguments separately.

---

[29] *Id.*
[30] Indeed, the Complaint is completely devoid of any factual allegations against Tompson.

14

## A. Applicability of Absolute Immunity

Defendants argue that absolute judicial immunity may be extended to them in this matter. Judges are absolutely immune from suit for damages under § 1983 for action performed in their role as judges, even where their actions are malicious.[31] Absolute immunity does not, however, shield individuals from suits for declaratory relief.[32] Absolute immunity "help[s] guarantee an independent, disinterested decision-making process" by "prevent[ing] harassment and intimidation that could otherwise result if disgruntled litigants—particularly criminal defendants and inmates . . . could vent their anger by suing . . . the person or persons who rendered an adverse decision."[33] As another section of this Court recently summarized:

> To further this underlying policy, "other necessary participants in the judicial process are entitled to absolute quasi-judicial immunity." This absolute quasi-judicial immunity "protects officials that perform functions comparable to those of judges . . . ." In determining whether an official is entitled to absolute quasi-judicial immunity, courts must take a "functional approach"—looking to "the nature of the function performed, not the identity or title of the actor who performed it." Consistent with this "functional approach," courts often hold that other judicial employees, such as clerks of court, law clerks, and others, enjoy absolute quasi-judicial immunity when "performing a discretionary act or . . . a ministerial function at the direction of the judge." In other words, judicial employees are absolutely immune when they act, whether "in bath faith or with malice" pursuant to a court order or a judge's instructions because the employee is "act[ing] as the arm of the judge and comes within his absolute immunity."[34]

---

[31] *Holloway v. Walker*, 765 F.2d 517, 522 (5th Cir. 1985).
[32] *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982).
[33] *Johnson v. Kegans*, 870 F.2d 992, 996–97. (5th Cir. 1989)
[34] *Cain v. City of New Orleans*, 184 F. Supp. 3d 379, 388–89 (E.D. La. 2016).

Defendants argue that their roles as part of the Drug Court were under the direct supervision of the presiding judge, entitling them to absolute judicial immunity. Plaintiffs respond, arguing that the "Drug Court" is not a court, but rather a non-profit treatment program. The Court does not find this argument persuasive. A review of the statute authorizing the creation of the drug courts indicates that it is an intensive probation program over which the judges preside.[35] The sanctions complained of by Plaintiffs were imposed by judges acting in their judicial roles, shielding them from liability. Any role Defendants played in bringing about these allegedly unconstitutional sanctions was judicial in nature, entitling them to absolute immunity. Accordingly, the § 1983 claims for damages asserted against the Drug Court Administrators in their personal capacities are dismissed with prejudice.

### B. Class Allegations

The Drug Court Administrators adopt arguments asserted by McNair relative to the Complaint's class allegations. They asserted that Plaintiffs have failed to show that there are common issues of law or fact among the class members sufficient to support a class action against them. This Court agrees. The class allegations of the Complaint contain broad factual assertions relative to the Drug Court; however, they do not allege that the Defendant Drug Court Administrators were involved in the alleged rights deprivations of all class members. Accordingly, the class allegations against the Drug Court Administrators are stricken.

## IV. Jurisdiction Over Remaining Claims

The Court notes that Plaintiffs have asserted § 1983 claims for damages, declaratory, and injunctive relief against the Drug Court Administrators and

---

[35] La. Rev. Stat. § 13:5304.

McNair arising out of their roles as officials with the Drug Court. The Court has ruled that any § 1983 claims for damages asserted against these individuals in their personal capacities are precluded by either absolute or qualified immunity. It appears to this Court, however, that Plaintiffs also seek relief against these individuals in their official capacities. Official capacity claims merely represent an alternative means of pleading a cause of action against the entity of which the individual is a member—here, the Jefferson Parish Drug Court.[36] The Court now sua sponte raises the issue of its jurisdiction to entertain such claims.

Despite Plaintiffs' arguments to the contrary, it is apparent from the statute authorizing the Drug Court that it exists under the auspices of the 24th Judicial District Court for the Parish of Jefferson. Accordingly, any suit against the Drug Court appears precluded by the immunity provisions of the Eleventh Amendment. Indeed, "Courts in this and other circuits routinely hold that state courts are immune from suit under the Eleventh Amendment."[37]

---

[36] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) ("Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent.").

[37] *Cain v. City of New Orleans*, No. CV 15-4479, 2016 WL 2742374, at *1 (E.D. La. May 11, 2016) ("See, e.g., *Jefferson v. La. State Supreme Court*, 46 Fed. Appx. 732, *1 (5th Cir. 2002) ("The Eleventh Amendment clearly bars [plaintiff's] § 1983 claims against the Louisiana Supreme Court, which is a branch of Louisiana's state government."); *Bourgeois v. Par. of Jefferson*, 20 F.3d 465, *1 (5th Cir. 1994) (holding that the Orleans Parish Civil District Court is "an agency of the state" entitled to Eleventh Amendment immunity); *Summers v. Louisiana*, No. 13-4573, 2013 WL 3818560, at *4 (E.D. La. July 22, 2013) (holding that an official capacity claim against a state court judge "would in reality be a claim against the state itself, and...would be barred by the Eleventh Amendment"); *Wilkerson v. 17th Judicial Dist. Court*, No. 08-1196, 2009 WL 249737, at *4 (E.D. La. Jan. 30, 2009) ("It is clear that the Eleventh Amendment bars § 1983 claims against a state court."); *Rackley v. Louisiana*, No. 07-504, 2007 WL 1792524, at *3 (E.D. La. June 21, 2007) ("[T]he Eleventh Amendment likewise bars § 1983 claims against a state court."); *see generally Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir. 1997) (noting that state courts are not "persons" under section 1983 and are otherwise immune from suit as an arm of the state government); *Harris v. Champion*, 51 F.3d 901, 905-06 (10th Cir. 1995) (holding that

Because this issue is jurisdictional, the Court may raise it sua sponte.[38] Before dismissing any such claims, however, the Court will allow briefing on the subject. The parties are therefore directed to submit briefs, not to exceed five pages, addressing the limited issue of whether any official capacity claims brought against Defendants Becnel, Mussal, Theriot, and McNair are precluded by the provisions of the Eleventh Amendment. The briefs shall be submitted within 15 days of the entry of this order.

## CONCLUSION

For the foregoing reasons, Defendants Motions are **GRANTED IN PART** as outlined herein. Plaintiffs may amend their Complaint within 21 days of the entry of this Order to the extent they can remedy any deficiencies outlined herein.

**IT IS FURTHER ORDERED** that the parties shall submit any briefing relative to this Court's jurisdiction to entertain official-capacity claims against Defendants Becnel, Mussal, Theriot, and McNair within 15 days of the entry of this Order. Any such briefs shall not exceed five pages in length.

---

Oklahoma Court of Criminal Appeals is immune from suit under Eleventh Amendment as "a governmental entity that is an arm of the state"); *Landers Seed Co., Inc. v. Champaign Nat'l Bank*, 15 F.3d 729, 731-32 (7th Cir. 1994) ("The Eleventh Amendment, however, bars federal suits against state courts and other branches of state government*[.]*"); *Clark v. Clark*, 984 F.2d 272, 273 (8th Cir. 1993) ("Courts are not persons within the meaning of 42 U.S.C. § 1983, and, if they were, the action would be barred by the Eleventh Amendment anyway.")").

[38] *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 333 (5th Cir. 2002).

New Orleans, Louisiana this 23rd day of May, 2017.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**