# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TAYLOR CARLISLE, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 16-3767** |
| **NEWELL NORMAND, ET AL.** | **SECTION: "H"(1)** |

## ORDER AND REASONS

Before the Court are three Motions: a Motion to Dismiss filed by Defendants Joe McNair and McNair & McNair, LLC (Doc. 130); a Motion to Dismiss filed by Defendants Richard Thompson and Joseph Marino (Doc. 138); and a Motion to Dismiss filed by Defendants Kristen Becnel, Tracey Mussal, and Kevin Theriot (Doc. 128). For the following reasons, Defendants Joe McNair and McNair & McNair, LLC's Motion is GRANTED IN PART, Defendants Richard Thompson and Joseph Marino's Motion is GRANTED IN PART, and Defendants Kristen Becnel, Tracey Mussal, and Kevin Theriot's Motion is GRANTED.

## BACKGROUND

In this suit, Plaintiffs challenge the manner in which the Jefferson Parish Drug Court ("Drug Court") is conducted. In addition to their individual claims, they seek to represent a class of individuals who were similarly sentenced by the Drug Court.

I. **Allegations of Plaintiffs' Complaint and First Supplementing Complaint**

Plaintiffs' Complaint and First Supplementing Complaint made the following allegations.[1]

Plaintiff Taylor Carlisle was arrested on November 9, 2012 and charged in the 24th Judicial District Court for the Parish of Jefferson with possession of oxycodone in case number 12-6158 and with possession of marijuana and drug paraphernalia in case number 12-6159. On January 30, 2015 he entered a guilty plea as to all charges. In case number 12-6159, he was sentenced to time served, while his plea in case number 12-6158 was entered pursuant to Louisiana Revised Statutes § 13:5304, also known as the "Louisiana Drug Court Statute." He was sentenced to between zero and five years, with the sentence deferred contingent upon his completion of the Jefferson Parish Intensive Drug Court Program while on probation. As part of this program, Carlisle was required to maintain regular contact with the program probation officer and Drug Court, attend regular AA meetings, consent to regular drug testing, and present required documentation to the probation officer and Drug Court. He also agreed to waive due process rights in Drug Court proceedings.

His primary claim involves allegations that he received excessive sentences from Drug Court for failure to comply with the terms of the program. On April 28, 2015, he was sanctioned to 90 days flat time.[2] On August 25, 2015, he was sanctioned with six months of flat time for contempt of court when he failed to appear for a hearing. Carlisle brings six claims relative to his experience in Drug Court, essentially averring that the closed courtroom, lack of court reporter, and lack of adversarial proceedings violate his due process rights. He also alleges that these sentences were in excess of those permitted

---

[1] *See* Docs. 1, 14.
[2] "Flat time" refers to "[a] prison term that is to be served without the benefit of time-reduction allowances for good behavior and the like." TIME, BLACK'S LAW DICTIONARY (10th ed. 2014).

under the state law authorizing Drug Court and that they are impermissible flat time sentences. He argues that this is a violation of the Eighth Amendment's protections against cruel and unusual punishment and the Equal Protection Clause of the Fourteenth Amendment. First, he seeks declaratory and injunctive relief prohibiting Drug Court from acting in this unconstitutional manner. Second, he brings a § 1983 claim against Sheriff Normand for deliberate indifference in keeping Carlisle in jail for the flat time sentences of 90 and 180 days, in violation of Louisiana law and his Equal Protection and Due Process rights. Third, he brings a § 1983 claim against Drug Court Administrator Kristen Becnel, Program Supervisor Tracy Mussal, Probation Coordinator Kevin Theriot (collectively, the "Drug Court Administrators"), and Director of Counseling Joe McNair for failure to properly train and supervise the implements of Drug Court policy.

In addition to these constitutional claims, he brings "pendant state law claims" against several individuals. First, he brings a legal malpractice claim against the Drug Court's Indigent Public Defender Board and its staff attorney, Joe Marino. Mr. Marino was appointed to represent Carlisle in Drug Court, and Carlisle contends that he breached his duty by failing to appropriately defend Carlisle. Second, he brings a claim against Drug Court Clinical Director Joe McNair for breach of his duty as a therapist. He avers that McNair owed him a duty to act within the standard of care governing the treatment of patients with substance abuse problems and that he breached that duty by failing to make proper recommendations as to his treatment.

Plaintiff Emile Heron has been a participant in the Drug Court program since April 17, 2012. He pleaded guilty to one count of possession of oxycodone. He alleges that he suffered periods of detention for technical violations of his probation without procedural due process. On July 30, 2013, he was sentenced

to 24 hours flat time for failing to complete required community service. He next alleges that, on November 12, 2013, he was sentenced to 30 days flat time for "associating with a felon" despite having never committed that offense. On January 14, 2014, he was sanctioned with 60 days flat time for failing to appear at Drug Court on January 3, 2014. He further avers that he was held for an additional four and a half months at the end of this sentence while waiting for a long term care bed to become available. Eventually, he was sent to Assisi Bridge House in Shreveport for seven and half months of inpatient treatment. Upon release, he was again sanctioned for noncompliance and sentenced to 16 hours of community service due November 18, 2014. It seems that he failed to complete this community service and was therefore sentenced to 48 hours in the Jefferson Parish Correctional Center on December 2, 2014. On February 5, 2015 he was held in contempt for failure to pay $1,624.50 in fines from the original plea agreement. He was later jailed on December 15, 2015 for failure to complete community service. He alleges that he was held until January 26, 2016, at which time he was sanctioned with six months' time. He alleges that all of these sanctions were imposed without hearing, a court reporter, or formal notice in violation of due process. He also alleges that, while he was incarcerated, his probation was extended by motion without his knowledge.

Plaintiffs also seek certification of the following two classes:

> Those individual natural persons who, while participating as probationers in the 24th Judicial District Court Drug Court program pursuant to Plea Agreement (hereinafter the "probationers") have been sanctioned, for alleged probation infractions and sentenced with jail time in the Jefferson Parish Correctional Center or other location, in excess of ten days as proscribed by LA Code Crim. Proc. 891(c). and/or in violation of the Drug Court Act, R.S. 13:5304 et seq. These probationers include but are not limited to those sentenced to "flat time" in connection with

said sanctions, as well as those who are alleged to have committed Contempt and sentenced to jail time without a hearing or opportunity to defend, or without a record from which to launch an appeal based on Due Process waivers executed at the time of the Plea Agreement.

[and]

[A]ll persons who are or were participants in Jefferson Parish Drug Court Program "held over" pending (1) revocation of their probation based on technical probation agreement violations imposed by the Drug Court staff or the Court, without evidentiary hearing and due process or statutory authority for issuance of jail sanction or (2) holding a probationer in jail and whose probations were subsequently revoked based on violations for which they were already sanctioned with jail terms or (3) for other reasons not prescribed in the governing statute including pending transfer to a rehabilitation facility.[3]

Plaintiffs aver that all of these individuals were subject to a pattern and practice of conduct whereby they were deprived of liberty under color of state law. They aver that the subject class may consist of more than one thousand individuals and that their claims involve common questions of law and fact.

## II.    Initial Round of Motions to Dismiss

Three groups of Defendants moved separately to dismiss Plaintiffs' claims as stated in the Complaint and First Supplementing Complaint. The Court addressed the motions with a consolidated Order and Reasons on May 23, 2017.[4]

The Court dismissed all personal-capacity claims against Defendant McNair. The Court dismissed the negligence claims without prejudice, finding

---

[3]  Doc. 14 ¶¶ 94–95.
[4]  Doc. 110.

that Plaintiffs failed to sufficiently allege a doctor-patient relationship.[5] The Court dismissed the failure to train and deliberate indifference claims without prejudice because the Complaints failed to allege a causal connection between McNair and the sanctions imposed by a judge. Further, the Court found that Defendant McNair had qualified immunity against a suit for damages under § 1983 in his personal capacity because Plaintiffs failed to establish that the due process waivers they signed were clearly illegal. The Court accordingly dismissed the personal-capacity § 1983 claims for damages with prejudice. The Court found that Plaintiff Heron failed to plead any facts supporting his claims against Defendant McNair and dismissed Plaintiff Heron's claims without prejudice. Finally, the Court struck the class allegations against Defendant McNair for the failure to plead common questions of law and fact relative to him.

The Court dismissed without prejudice Plaintiffs' legal malpractice claims against Defendants Thompson and Marino. The Court found that although such claims fell within the Court's supplemental jurisdiction, Plaintiffs failed to allege that the actions of Defendant Marino caused the harm of which Plaintiffs complain. Plaintiffs further made no factual allegations supporting a malpractice claim against Defendant Thompson.

The Court dismissed with prejudice Plaintiffs' § 1983 claims for damages against the Drug Court Administrators in their personal capacities. The Court found that the Drug Court program is an intensive probation program over which judges preside. Any role the Defendants played in bringing about the allegedly unconstitutional sanctions was judicial in nature, entitling the Drug Court Administrators to absolute judicial immunity. The Court also struck the class allegations against the Drug Court Administrators for failing to allege

---

[5] Doc. 110.

that those Defendants were involved in the deprivation of rights of all class members.

The Court asked the parties to submit additional briefing on the Court's jurisdiction to hear claims against Defendants in their official capacities. The Court concluded that Drug Court exists under the auspices of the 24th Judicial District Court for the Parish of Jefferson and is therefore an arm of the state. The Court dismissed with prejudice Plaintiffs' official-capacity claims against Defendants McNair and the Drug Court Administrators as barred by the Eleventh Amendment.[6]

## III.  Plaintiffs' Second Amending and Supplementing Complaint

Having dismissed several of Plaintiffs' claims without prejudice, the Court granted Plaintiffs leave to amend, which they did with the submission of their Second Amending and Supplementing Complaint ("Second Amending Complaint").[7] The Second Amending Complaint re-asserts the entirety of the original Complaint and First Supplementing Complaint. It also adds the following parties: Officer Patricia Klees of the Gretna Police Department, alleged to be a team member of Drug Court; McNair & McNair, LLC ("McNair's Business"); Defendant Joseph McNair in his official capacity as a member of the Drug Court team; Jefferson Parish; and two unidentified insurance companies.

Plaintiffs' Second Amending Complaint alleges additional factual details as to how the Drug Court team, including Defendants McNair, Marino, and the Drug Court Administrators, allegedly conspired to have the Drug Court judge sanction Plaintiffs in violation of due process. Plaintiffs specifically allege that Defendant Klees lied to Defendant Theriot about how Klees discovered

---

[6]  Doc. 136.
[7]  *See* Doc. 117.

Plaintiff Carlisle's missing AA paperwork. Plaintiffs allege that Defendants knowingly ignored national treatment standards and drug court guidelines in implementing the program. Plaintiffs allege that the rights of all class members were violated by Defendants' policies and practices of ignoring treatment standards, recommending illegal sanctions, and participating in proceedings lacking due process.

With respect to the state-law claims against Defendant McNair, Plaintiffs allege that McNair evaluated them for treatment and admission into the Drug Court program. Plaintiffs also allege that after the initial February 2013 evaluations, Defendant McNair never again evaluated Plaintiffs or recommended that they be evaluated by another specialist. Plaintiff Carlisle alleges that McNair ordered him to go to Oxford House without authority and in violation of the Drug Court authorizing statutes.

## IV. Second Round of Motions to Dismiss

Three groups of Defendants again move separately to dismiss the remaining and amended claims against them.

The Drug Court Administrators move the Court to dismiss all claims against them pursuant to Rules 12(b)(1) and 12(b)(6).[8] They argue that Plaintiffs, having been discharged from Drug Court, no longer have standing to bring their claims. The Drug Court Administrators also argue that they have absolute judicial immunity. Plaintiffs oppose the Motion, arguing that Plaintiffs do have standing because they continue to suffer harm, that judicial immunity should not apply, and that the official capacity claims should not have been dismissed in the first place.

Defendants McNair and McNair's Business also move to dismiss for lack of jurisdiction and failure to state a claim, as well as to strike the class

---

[8] Doc. 128.

allegations.[9] They argue that Plaintiffs lack standing because they have been discharged from Drug Court, that any official-capacity claims against them have been dismissed already pursuant to Eleventh Amendment immunity, and that the Second Amending Complaint fails to allege either numerosity or common questions of law and fact as required by Rule 23. Plaintiffs oppose the motion, arguing that their continued harm gives them standing and that immunity does not apply.

Defendants Marino and Thompson move to dismiss the state-law malpractice claims against them on the grounds that a) the claims do not fall under the Court's supplemental jurisdiction, b) that even if supplemental jurisdiction exists, the fact that the sentences of which Plaintiffs complain have not been overturned presents a compelling reason to decline to exercise supplemental jurisdiction, and c) that Plaintiffs fail to state a claim for legal malpractice because the underlying sentences have not been overturned, Plaintiffs fail to allege causation, and Plaintiffs' allegations against Defendant Thompson are merely conclusory.[10] Defendants Marino and Thompson move to dismiss the § 1983 claims against them on the grounds that a) as defense attorneys, they are private actors and not subject to suit under § 1983, and b) that Plaintiffs lack standing to bring claims for injunctive and declaratory relief. Finally, Defendants Marino and Thompson move to dismiss all claims against them because they are barred by the application of *Heck v. Humphrey* and because Louisiana state courts already adjudicated Plaintiffs' claims.[11] Plaintiffs oppose the Motion, arguing inter alia that *Heck* and res judicata do not apply, and that Defendants Marino and Thompson were not acting as private individuals because they were not traditional defense attorneys.

---

[9] Doc. 130.

[10] Doc. 138.

[11] *See* Heck v. Humphrey, 512 U.S. 477 (1994).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[12] A claim is "plausible on its face" when the pleaded facts allow the court to "[d]raw the reasonable inference that the defendant is liable for the misconduct alleged."[13] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[14] The Court need not, however, accept as true legal conclusions couched as factual allegations.[15]

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[16] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[17] Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim.[18]

A Rule 12(b)(1) motion challenges the subject matter jurisdiction of a federal district court. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[19] In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint

---

[12] Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)).
[13] *Id.*
[14] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).
[15] *Iqbal*, 556 U.S. at 667.
[16] *Id.*
[17] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).
[18] *Lormand*, 565 F.3d at 255–57.
[19] Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).

supplemented by undisputed facts and by the court's resolution of disputed facts.[20] The proponents of federal court jurisdiction—in this case, Plaintiffs—bear the burden of establishing subject matter jurisdiction.[21]

## LAW AND ANALYSIS

Plaintiffs' Second Amending Complaint is replete with factual detail, but at the expense of clarity as to the specific claims that Plaintiffs assert. In the broadest reading of all complaints together, Plaintiffs appear to assert claims under § 1983 for both damages and injunctive relief against Defendants McNair and McNair's Business, Marino and Thompson, and the Drug Court Administrators (collectively, "Moving Defendants") in both their personal and official capacities.[22]

As explained below, none of Plaintiffs' § 1983 claims against the Moving Defendants survive. Plaintiffs' official-capacity claims for damages are barred by the Eleventh Amendment. Plaintiffs lack standing to bring claims for injunctive or declaratory relief because the Moving Defendants do not have the power, in either their official or personal capacities, to redress the harms of which Plaintiffs complain. And Plaintiffs' personal-capacity claims for damages are barred by the doctrines of either qualified immunity or absolute judicial immunity.

Furthermore, Plaintiffs fail to plead a viable state-law claim against Defendant Thompson, but Plaintiffs' legal malpractice claim against Defendant Marino and negligence claims against Defendants McNair and McNair's Business survive.

---

[20] Den Norske Stats Oljesels kap As v. Heere MacVof, 241 F.3d 420, 424 (5th Cir. 2001).

[21] *See* Physicians Hosps. of Am. v. Sebelius, 691 F.3d 649, 652 (5th Cir. 2012).

[22] *See, e.g.*, Doc. 117 at 4 (official-capacity claims against Drug Court Administrators, Marino and Thompson, and McNair); Doc. 1 at 7 (naming Defendants without reference to official capacity).

## I.   Section 1983 Claims for Damages Against Moving Defendants in Their Official Capacities

Previously, this Court dismissed Plaintiffs' claims against the Drug Court Administrators and McNair in their official capacities on the grounds that Drug Court is an arm of the state and therefore immune to suit under the Eleventh Amendment.[23] Plaintiffs' Second Amending Complaint newly asserts claims against Defendants Marino and Thompson in their official capacities, alleging that they worked in concert with the other Defendants as part of the Drug Court team to deprive Plaintiffs of their rights. For the same reasons as applied to Defendants McNair and the Drug Court Administrators, Plaintiffs' official-capacity claims against Defendants Marino and Thompson are also barred by the Eleventh Amendment. Furthermore, state officials named in their official capacity are not "persons" under § 1983 and therefore are not amenable to suit.[24] Accordingly, the official-capacity claims for damages against Defendants Marino and Thompson are dismissed with prejudice.

In their Oppositions, Plaintiffs repeatedly urge the Court to reconsider the earlier Order and Reasons finding Drug Court to be an arm of the state. Although Plaintiffs have not made a formal motion to reconsider under Rule 59(e), the standard applicable to that rule is informative. "A motion to alter or amend judgment must 'clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued.'"[25] There has been no change in existing law and Plaintiffs offer no new

---

[23] Doc. 136. Any official-capacity claims against McNair's Business are likewise dismissed because Plaintiffs have asserted no basis for McNair's Business's liability separate from McNair's liability.

[24] *See* Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

[25] Ross v. Marshall, 426 F.3d 745, 763 (5th Cir. 2005) (quoting Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990)).

evidence that was not available when the Court first requested briefing on the issue of Eleventh Amendment immunity.

Regardless, the Court's conclusion that Drug Court is an arm of the state and therefore immune from suit because of the Eleventh Amendment is correct. To determine whether a body is a state agency, courts in the Fifth Circuit must consider,

> (1) whether the state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.[26]

Here, the factors weigh in favor of finding Drug Court to be an arm of the state. First, the statutes creating the program clearly view it as a function of the state courts, which are themselves state entities.[27] The statutes state that the legislature's intent was to "facilitate the creation of alcohol and drug treatment divisions in the various district courts of this state,"[28] and authorize "each district court [to] establish a probation program to be administered by the presiding judge or judges thereof or by an employee designated by the court."[29] Opinions from the Louisiana Attorney General also view drug courts as programs of the state courts.[30]

---

[26] Williams v. Dallas Area Rapid Transit, 242 F.3d 315, 319 (5th Cir. 2001) (citing Clark v. Tarrant Cty., 798 F.2d 736, 744 (5th Cir. 1986)).

[27] See Bourgeois v. Par. of Jefferson, 20 F.3d 465 (5th Cir. 1994) (holding that Louisiana state courts are arms of the state and immune under the Eleventh Amendment); Doc. 136 at n.3.

[28] La. Rev. Stat. § 13:5301.

[29] Id. § 13:5304.

[30] See, e.g., La. Att'y Gen. Op. No. 07-0100 (May 1, 2007) (advising that the district court was the last employer of a drug court staffer, even though the parish paid the staffer's salary, because the parish was reimbursed with court funds).

Second, from the information included in Plaintiffs' Second Amending Complaint, Drug Court appears to be funded by federal grants given to the state and administered by the Louisiana Supreme Court.[31] Presumably, any judgment against the Drug Court would be paid out of those funds, which are part of the state treasury.

Third, drug courts are controlled by judicial districts, rather than local parishes, and those judicial districts are not necessarily coterminous with a given parish.[32] Control by a state entity that is separate from local government weighs towards finding that drug courts are arms of the state.

The fourth factor, whether the entity is concerned with mainly local problems, is mixed. Drug courts are administered by state entities, which suggests that they tackle issues of statewide import. On the other hand, the statute leaves each district court the discretion to establish a drug court, suggesting that the creation of any one drug court program is a response to local conditions.

The fifth and sixth factors, whether the drug courts can sue, be sued, and own property in their own names, are less important.[33] The Court does not have specific information before it relating to those factors. Even if those factors were to lean in the opposite direction, they would not overcome the clear weight of the prior factors toward finding Drug Court to be an arm of the state.

Accordingly, all claims for damages against the Moving Defendants in their official capacities are dismissed with prejudice.

---

[31] *See* Doc. 117 ¶¶ 111, 142, 151.

[32] *See* La. Const. art. V, §§ 14–15 (giving the legislature the power to create judicial districts comprising multiple parishes); *cf.* Clark v. Tarrant Cty., Tex., 798 F.2d 736, 745 (5th Cir. 1986) (concluding that the legal distinction between judicial districts and county lines, though sometimes coterminous, means that probation departments tied to judicial districts are not concerned with county problems).

[33] *See* Hudson v. City of New Orleans, 174 F.3d 677, 682 (5th Cir. 1999) ("[W]e typically deal with the last two factors in a fairly brief fashion.").

While the Eleventh Amendment bars claims against the state, there are two exceptions relevant to the § 1983 claims here. First, the *Ex parte Young* doctrine allows a plaintiff to sue a state officer in his official capacity for prospective injunctive or declaratory relief.[34] Second, a plaintiff may sue a state officer in his personal capacity for damages resulting from a deprivation of the plaintiff's constitutional rights under color of law.[35]

## II.    Section 1983 Claims for Injunctive or Declaratory Relief

Plaintiffs assert claims for injunctive and declaratory relief against the Moving Defendants in their official capacities. The Moving Defendants argue that Plaintiffs have no standing to sue for declaratory or injunctive relief because they have been discharged from the Drug Court program. Article III standing requires a plaintiff to show that he suffered a concrete harm that is actual or imminent, caused by the defendant, and redressible by the court.[36] When a plaintiff seeks injunctive or declaratory relief, the plaintiff must also show that he is "likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury."[37]

To support their contention that Plaintiffs are no longer participating in Drug Court, Defendants submit discharge forms signed by Mussall as the Drug Court Administrator. The forms show that Plaintiff Carlisle was discharged from Drug Court on August 10, 2016,[38] and that Plaintiff Heron was discharged on July 20, 2016.[39] Plaintiffs object to the submission of evidence outside the pleadings, arguing that reliance on such evidence would convert the motions to dismiss into motions for summary judgment without adequate

---

[34] *See* Fontenot v. McCraw, 777 F.3d 741, 752 (5th Cir. 2015).
[35] *See* Hafer v. Melo, 502 U.S. 21, 30–31 (1991).
[36] *See* Cole v. Gen. Motors Corp., 484 F.3d 717, 721 (5th Cir. 2007).
[37] James v. City of Dallas, Tex., 254 F.3d 551, 563 (5th Cir. 2001).
[38] Doc. 128-2.
[39] Doc. 128-3.

discovery. This is incorrect, as Defendants have moved under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction. In deciding a jurisdictional issue, the Court may rely on the complaint supplemented by undisputed facts, or the complaint supplemented by undisputed facts and by the Court's resolution of disputed facts.[40]

Plaintiffs do not appear to dispute the fact that they have been discharged from Drug Court. Plaintiffs submit a minute entry from the 24th Judicial District Court recording Plaintiff Heron's revocation and sentencing on his original charge and claim the document "refutes the standing argument and more correctly demonstrates the plaintiffs' current circumstances."[41] But Plaintiffs do not assert in any of their oppositions to the motions to dismiss considered here that Plaintiffs have not been discharged. Therefore, the Court finds that the fact that Plaintiffs have been discharged from Drug Court is an undisputed fact. At the very least, the Court finds the Moving Defendants' evidence sufficient to show that Plaintiffs have been discharged.

While Plaintiffs remain in prison, their current sentences stem from the revocation of their probation, not the imposition during Drug Court of sanction or contempt time. A declaration that the practices of Drug Court were unlawful or an injunction prohibiting such conduct in the future would have no impact on the sentences that Plaintiffs are currently serving. Furthermore, any future contact that Plaintiffs may have with Drug Court is merely speculative and cannot be the grounds for standing.[42] Plaintiffs cannot show that they are "likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury."[43]

---

[40] *Den Norske Stats Oljesels kap As*, 241 F.3d at 424.
[41] Docs. 146 at 1; 146-1.
[42] *See James*, 254 F.3d at 563.
[43] *See id.*

Plaintiffs argue that they continue to suffer harm, and thus have standing, by pointing to a litany of negative impacts caused by the actions of Defendants while Plaintiffs were enrolled in Drug Court. Plaintiffs do not, however, demonstrate how declaratory or injunctive relief against the Moving Defendants is likely to redress the vast majority of that harm. For example, injunctive or declaratory relief cannot redress Plaintiffs' lost employment.

Plaintiffs come closest to identifying harms redressible by injunction in two instances. First, Plaintiffs argue that they continue to suffer harm from the imposition of flat time sentences because they should be able to apply against their current post-revocation sentences good time credit that they earned while imprisoned for the allegedly unlawful sanctions. Second, Plaintiffs argue that they should receive credit toward their current post-revocation sentences for all time served while in Drug Court because the underlying infractions were the same events that led to their revocations. However, none of the Moving Defendants has the power to grant that relief.[44]

Even if the Moving Defendants were the correct parties against which to seek such an injunction, the claim would be barred by *Preiser v. Rodriguez*.[45] An injunction forcing the state to apply good time or time served credits to Plaintiffs' current sentences would result in earlier release, and the only avenue for such a remedy is a writ of habeas corpus.[46] In *Wolff v. McDonnell*, the Supreme Court did allow prisoners to seek a declaration under § 1983 that the procedures by which they were denied good time credit were unconstitutional, even though such a judgment could have reduced their

---

[44] *See* K.P. v. LeBlanc, 627 F.3d 115, 124 (5th Cir. 2010) (explaining that the *Ex Parte Young* exception applies only to state officials with at least "some connection" to the compulsion or restraint involved in enforcement).

[45] *See* Preiser v. Rodriguez, 411 U.S. 475, 500 (1973).

[46] *See id.*

sentences through the application of collateral estoppel and res judicata.[47] Plaintiffs here may not pursue such claims because they, unlike the prisoners in *Wolff*, are not currently subject to the procedures they allege to be deficient. The only interest Plaintiffs now have in changing the Drug Court procedures is to be released from prison sooner based on a retroactive declaratory judgment, a claim foreclosed by *Preiser*.

Plaintiffs have failed to establish that they are suffering, or are about to suffer, a harm redressible by injunction or declaration directed against the Moving Defendants. Accordingly, Plaintiffs' claims for injunctive and declaratory relief against the Moving Defendants are dismissed with prejudice for lack of standing.

That Plaintiffs have pled a class action is of no import to the standing inquiry.[48] "Before we reach the questions regarding the class certification, we must resolve the standing question as a threshold matter of jurisdiction."[49] "If the litigant fails to establish standing, he or she may not seek relief on behalf of himself or herself or any other member of the class."[50] Plaintiffs here have not been certified as class representatives and so their class action claims cannot preserve their action in the face of Plaintiffs' lack of personal standing.

## III.   Section 1983 Claims for Damages Against Defendants in Their Personal Capacities

The Court previously dismissed with prejudice Plaintiffs' personal-capacity § 1983 claims for damages against Defendants McNair and the Drug

---

[47] *See* Wolff v. McDonnell, 418 U.S. 539, 542, (1974); Serio v. Members of Louisiana State Bd. of Pardons, 821 F.2d 1112, 1116 (5th Cir. 1987) (elucidating guiding principles from *Preiser* and *Wolff*).
[48] *See* Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976).
[49] *Cole*, 484 F.3d at 721.
[50] *James*, 254 F.3d at 563.

Court Administrators. The Court found that the claims against the Drug Court Administrators could not proceed because any role they played in the imposition of the complained-of sanctions was judicial in nature and thus protected by absolute judicial immunity.[51] Plaintiffs' claims for damages against McNair were barred by qualified immunity because Plaintiffs could not show that the due process waivers they executed were clearly prohibited by law.[52]

Defendants Marino and Thompson argue that Plaintiffs' § 1983 claims for damages against them should be dismissed because a) Marino and Thompson are not state actors, b) *Heck v. Humphrey* bars § 1983 claims for damages that impugn a state sentence unless the sentence has already been invalidated, and c) Plaintiffs' claims are precluded by prior adjudication. The Court finds that Plaintiffs' claims for damages are barred by *Heck* and therefore does not reach Defendants Marino and Thompson's other arguments.

In *Heck v. Humphrey* the Supreme Court held that before a plaintiff may maintain a § 1983 action for damages resulting from an unconstitutional conviction or confinement, the conviction or confinement must be invalidated in some other proceeding.[53] "Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus."[54] The rule applies not only to claims that seek damages for the confinement itself, but also those "for other harm caused

---

[51] Doc. 110 at 15–16.
[52] Doc. 110 at 8–9. For the same reasons, any personal-capacity claims for damages under § 1983 against Defendant McNair's Business are also dismissed. Plaintiffs have advanced no facts alleging that McNair's Business is liable separately from McNair himself.
[53] *Heck*, 512 U.S. at 489–90.
[54] *Id.* at 489.

by actions whose unlawfulness would render a conviction or sentence invalid."[55]

Here, Plaintiffs allege that Drug Court violated their constitutional rights by imprisoning them without due process, in the form of probation sanctions, contempt convictions, and time spent waiting. An award of damages to compensate for either the confinement itself or the alleged violations of due process that led to the confinements would necessarily imply that the confinements were invalid. *Heck* requires Plaintiffs to assert the invalidity of the confinements elsewhere before suing for damages.

Plaintiffs cite to *Brown v. Sudduth* and argue that *Heck* does not apply because Plaintiffs do not challenge the original convictions on which they were sent to Drug Court.[56] In *Brown*, the Fifth Circuit explained that a § 1983 action for false arrest does not necessarily impugn the validity of all subsequent convictions because a valid conviction can often follow an unlawful arrest.[57] Here, however, the issue is not whether Plaintiffs' claims would call into question their original convictions, but rather the imprisonments imposed upon them during Drug Court. On that point, Plaintiffs are very clear: "Plaintiffs' challenge is to various extended flat time 'incarcerations' without a hearing, without evidence, orchestrated by program staff, without convictions, after inter alia, ex parte communications between administrators and the judge alleging they committed 'technical infractions' of the treatment program they entered as a part of their probation agreement."[58] Plaintiffs plainly seek damages on the grounds that their incarcerations during Drug Court were invalid. That is exactly the type of claim barred by *Heck*. At the very least they

---

[55] *Id.* at 486.
[56] *See* Brown v. Sudduth, 255 F. App'x 803, 805–07 (5th Cir. 2007); Doc. 144 at 13–15.
[57] *Brown*, 255 F. App'x at 806.
[58] Doc. 144 at 14.

seek damages for violations of due process that would necessarily invalidate the imprisonments imposed as a result of those violations. That the incarcerations were allegedly not the result of a conviction, even if true, does not change the analysis, as *Heck* repeatedly uses "incarceration" interchangeably with "sentence."[59] Plaintiffs cite to no authority suggesting otherwise.

Plaintiffs also argue that a majority of the Supreme Court now only believe *Heck* applies to prisoners still serving the sentence of which they complain. The Fifth Circuit, however, explicitly rejected that interpretation and recognizes *Heck* as an unequivocal bar.[60]

Accordingly, Plaintiffs' § 1983 claims for damages against Defendants Marino and Thompson are dismissed with prejudice.

## IV. Remaining Claims

Having dismissed all § 1983 claims against the Moving Defendants, the only claims that remain are Plaintiffs' negligence claims against Defendants McNair and McNair's Business, and malpractice claims against Defendants Marino and Thompson.

### A. Defendants McNair and McNair's Business

Defendant McNair moves to dismiss the remaining claims against him on the grounds that Plaintiffs failed to re-allege a negligence claim against McNair or re-assert the existence of a therapist-patient relationship. McNair further argues that any claims against McNair's business should be dismissed for the same reasons as the claims against McNair himself.

---

[59] *See Heck*, 512 U.S. at 484–90; *see also* DeLeon v. City of Corpus Christi, 488 F.3d 649, 656 (5th Cir. 2007) (holding that *Heck* applies to deferred adjudication because such orders are treated as final and, similar to the sanctions imposed here, involve a "judicial finding that the evidence substantiates the defendant's guilt, followed by conditions of probation that may include a fine and incarceration").

[60] *See* Black v. Hathaway, 616 F. App'x 650, 653 (5th Cir. 2015).

The Court summarized Plaintiff Carlisle's negligence claim as presented in his First Complaint as follows:

> Carlisle alleges that McNair served as the Clinical Director of Drug Court and recommended Carlisle for the program. He alleges that McNair evaluated him for program eligibility and that he owed a duty to properly evaluate Carlisle throughout the program. He alleges that McNair failed to make appropriate recommendations relative to his treatment throughout the program.[61]

Finding those allegations insufficient to establish a patient-therapist relationship, the Court dismissed Plaintiff Carlisle's negligence claims.

In his Second Amending Complaint, Plaintiff Carlisle additionally alleges that Defendant McNair is responsible for the overall treatment protocol of the program, that McNair is the "supervising counselor," that McNair provided recommendations regarding Plaintiffs' treatment during the program, that Plaintiff Carlisle and other class members are sent to inpatient treatment on McNair's recommendation, and that McNair ordered "anti-depressant assessment" for Plaintiff Carlisle.[62] Plaintiff Carlisle further alleges that McNair imposed or recommended sanctions against Carlisle without clinical justification or counter to clinical guidelines, including sending Carlisle to an addiction treatment program despite the fact that Carlisle was not using drugs or alcohol,[63] demoting Carlisle to Phase 2 of the program as a punishment,[64] and requiring that Carlisle attend 90 meetings in 90 days.[65]

These additions, when viewed in the light most favorable to Plaintiff Carlisle, state facts that make it plausible there was a therapist-patient

---

[61] Doc. 110 at 7.

[62] Doc. 117.

[63] *See* Doc. 117 ¶¶ 160, 164, 166–75.

[64] Doc. 117 ¶ 161.

[65] Doc. 117 ¶¶ 181–82; *see also* Doc. 117 ¶ 191 (alleging that McNair actively participated in the imposition of a jail sentence for contempt that didn't occur).

relationship and that Defendant McNair caused harm to Plaintiff Carlisle by providing substandard care.[66] Defendant McNair's motion to dismiss is denied with respect to Plaintiff Carlisle's negligence claim. Defendant McNair's Business advances no independent basis for dismissal of Plaintiff Carlisle's negligence claim, and therefore Defendant McNair's Business's motion to dismiss is also denied with respect to Plaintiff Carlisle's negligence claim.

The Court dismissed Plaintiff Heron's negligence claim against Defendant McNair in the First Supplementing Complaint for the failure to allege any facts supporting a cause of action against McNair.[67] Plaintiff Heron again makes no specific factual allegations against Defendant McNair that would support a claim for negligence in the Second Amending Complaint. Therefore Plaintiff Heron's negligence claims against Defendants McNair and McNair's Business are dismissed with prejudice.

Defendants McNair and McNair's Business also move to strike the class allegations against them. In order for an action to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, each of the four prerequisites of Rule 23(a) must be satisfied.[68] Additionally, one of the three conditions of Rule 23(b) must be met by all proposed classes.[69] Ultimately, a "[d]istrict court maintains great discretion in certifying and managing a class action."[70] Courts have routinely applied Rule 23(d)(1)(D), formerly Rule 23(d)(4), to actions where a party seeks to strike class allegations because

---

[66] *Cf.* Green v. Walker, 910 F.2d 291, 295 (5th Cir. 1990) (holding that Louisiana law would extend to a physician hired by an employer to examine an employee the duty to perform necessary tests and inform the employee of the results).

[67] Doc. 110 at 11.

[68] Fed. R. Civ. P. 23.

[69] *Id.*; *see also* Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997).

[70] Berger v. Compaq Computer Corp., 257 F.3d 475,478 (5th Cir. 2001) (quoting Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 624 (5th Cir. 1999)).

plaintiffs have not met the requirements of Rule 23.[71] A court may strike class allegations under Rule 23 where a complaint fails to plead the minimum facts necessary to establish the existence of a class.[72]

Rule 23(b) allows a class action only when 1) separate actions risk inconsistent judgments or would impair the rights of class members, 2) injunctive or declaratory relief is appropriate for the class as a whole, or 3) the questions of law and fact that are common to the class predominate over those that are individual.[73] Plaintiffs make no argument regarding the first element, and all claims for injunctive or declaratory relief against Defendants McNair and McNair's business have been dismissed, negating the second element. The only remaining claim against Defendants McNair and McNair's Business is Plaintiff Carlisle's claim for negligence, and Plaintiffs have failed to demonstrate how common issues of fact or law regarding that claim predominate. The negligence claim is highly individual, depending on specific facts to establish a therapist-patient relationship and the ways in which Defendants allegedly breached the resulting duty. Accordingly, the class allegations as to Defendants McNair and McNair's Business are stricken.

**B. Defendants Marino and Thompson**

Defendants Marino and Thompson move to dismiss Plaintiffs' legal malpractice claims against them on the grounds that a) the Court lacks subject matter jurisdiction over the claims or should decline to exercise it, b) that Plaintiffs fail to state a claim for malpractice because Plaintiffs were the proximate cause of their own imprisonment, and c) that Plaintiffs fail to allege

---

[71] Markey v. La. Citizens Fair Plan, No. 06-5473, 2008 WL 5427708, at *1 (E.D. La. Dec. 30, 2008) (citations omitted).

[72] Aguilar v. Allstate Fire & Cas. Ins. Co., No. 06-4660, 2007 WL 734809, at *2 (E.D. La. Mar. 6, 2007).

[73] Fed. R. Civ. P. 23(b).

any facts that would prove Defendants Marino and Thompson breached their duty to Plaintiffs.

Defendant Thompson also moves to dismiss on the ground that Plaintiffs' only allegations against him, for failure to train or supervise, are entirely conclusory. The Court previously found that Plaintiffs' Complaint and First Amending Complaint were completely devoid of any factual allegations against Defendant Thompson. Plaintiffs have added nothing to the Second Amending Complaint regarding Thompson other than conclusory allegations that he failed to train Marino. Having been granted leave to amend once before, Plaintiffs' state-law claims against Defendant Thompson are dismissed with prejudice.

The Court previously held that Plaintiffs' legal malpractice claims against Defendant Marino shared a common nucleus of operative fact with the § 1983 claims and therefore fell within the Court's supplemental jurisdiction.[74] The Court also found that no exceptional circumstances existed to cause the Court to decline to exercise that jurisdiction. The dismissal of the all federal claims against Defendant Marino does not change those findings. Nor does it allow for the dismissal of Plaintiffs' state law claims under 28 U.S.C. 1367(c)(3), because § 1983 claims arising from the same nucleus of operative facts remain against other defendants.[75]

Although Defendant Marino argues that Plaintiffs have failed to allege that Marino either breached his duty to Plaintiffs or was the proximate cause of Plaintiffs' injuries, the Court finds that Plaintiffs have done both. The Court

---

[74] Doc. 110 at 11–13.

[75] *See* Enochs v. Lampasas Cty., 641 F.3d 155, 161 (5th Cir. 2011) (gathering authority for the general rule that state-law claims should be dismissed when all federal claims have been dismissed); Charles Allen Wright, et al., 13D FEDERAL PRACTICE & PROCEDURE § 3567.3 (3d ed. 2017) ("If any claim invoking an independent basis of subject matter jurisdiction remains viable . . . § 1367(c)(3) will not apply.").

already held that Louisiana law does not require a criminal defendant to supply proof of innocence before maintaining a legal malpractice action.[76] Plaintiffs have alleged that Defendant Marino failed to bring any objections to the Drug Court judge over allegedly unconstitutional procedures employed by the Drug Court team and Drug Court itself. Plaintiffs' Second Amended Complaint provides specific factual allegations regarding Defendant Marino's supposedly deficient representation, including the failure to object to the classification of a former Drug Court participant as a felon[77] and the failure to object to the imposition of contempt sentences.[78] These allegations, if true, make it plausible that Defendant Marino's performance fell below the standard of care required of him and caused Plaintiffs harm.[79] As those are the only elements of a legal malpractice claim that Defendant Marino challenges, his motion to dismiss Plaintiffs' malpractice claims is denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motions are **GRANTED IN PART**.

All of Plaintiffs' § 1983 claims against Defendants Joe McNair, McNair & McNair, LLC, Richard Thompson, Joseph Marino, Kristen Becnel, Tracey Mussal, and Kevin Theriot in their personal and official capacities, whether for injunctive or declaratory relief or damages, are DISMISSED WITH PREJUDICE.

Plaintiff Carlisle's negligence claims against Defendants McNair and McNair & McNair, LLC REMAIN.

---

[76] Doc. 110 at 14.
[77] Doc. 117 ¶ 196–98, 218.
[78] Doc. 117 ¶ 220.
[79] *See Iqbal*, 556 U.S. at 667.

Plaintiff Heron's negligence claims against Defendants McNair and McNair & McNair, LLC are DISMISSED WITH PREJUDICE.

The class allegations against Defendants McNair and McNair & McNair, LLC are STRICKEN with respect to the negligence claims.

All of Plaintiffs' claims against Defendant Thompson are DISMISSED WITH PREJUDICE.

Plaintiffs' legal malpractice claims against Defendant Marino REMAIN.

New Orleans, Louisiana this 31st day of October, 2017.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**