**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TAYLOR CARLISLE, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 16-3767** |
| **NEWELL NORMAND, ET AL.** | **SECTION: "H"(1)** |

## ORDER AND REASONS

Before the Court is Defendants Joe McNair, McNair & McNair, LLC, and Philadelphia Indemnity Insurance Company's Motion for Summary Judgment (Doc. 554). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

In this suit, Plaintiffs challenge the manner in which the Jefferson Parish Drug Court ("Drug Court") is conducted. Plaintiffs Taylor Carlisle and Emile Heron were convicted of the possession of various controlled substances and, as part of their sentences, enrolled in Drug Court. The gist of Plaintiffs' claim is that the Drug Court administrators deprived them of due process in various ways, leading to unlawful incarcerations and other negative consequences.

This case has been pending for a few years, and many of Plaintiffs' claims have been dismissed. For the purposes of this Motion, it is relevant that the only remaining claim against Defendants Joe McNair, McNair & McNair, LLC, and Philadelphia Indemnity Insurance Company (collectively, the "McNair

Defendants") is Plaintiff Taylor Carlisle's state law negligence claim for actions taken after April 27, 2015.[1]

The following relevant facts are undisputed. Joe McNair is a Licensed Professional Counselor ("LPC") in Louisiana.[2] Carlisle's first encounter with Joe McNair took place on January 24, 2013. On that date, McNair interviewed Carlisle at the Jefferson Parish Correctional Center, where he was being detained, in connection with his application to participate in Drug Court. Carlisle attended four group therapy sessions conducted by Joe McNair's employees between April 28, 2015 and August 25, 2015. Finally, Carlisle spoke with McNair on July 27, 2015—the first direct interaction between the two since McNair's initial interview of Carlisle in January 2013. These events constitute all of the interactions between the McNair Defendants and Carlisle that have not prescribed.[3] Additionally, Carlisle was sentenced to a 90-day flat time sanction on April 28, 2015. While serving that 90-day sanction, Carlisle was ordered to attend Oxford House upon completion of the sanction. Carlisle was then sentenced to a 6-month flat time sanction in a September 1, 2015 order. Finally, his probation status was revoked on September 22, 2015.

**<u>LEGAL STANDARD</u>**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[1] Doc. 545 at 2.

[2] *See* LA. STAT. ANN. § 37:1101 *et. seq*.

[3] While Plaintiffs assert that Carlisle maintained contact with the McNair Defendants "on an almost daily basis" by appearing "almost daily at McNair and MCNair [sic] offices for his counseling sessions" and "weekly in court [for] the status appearances," Plaintiffs provide no evidence in support. More importantly, however, Plaintiffs' state law negligence claims against the McNair Defendants never alleged that Carlisle suffered damages flowing from his regular counseling sessions or weekly court appearances.

to judgment as a matter of law."[4] "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[5] Nevertheless, a dispute about a material fact is "genuine" such that summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[7] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[8] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[9]

"In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[10] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[11] Additionally, "[t]he mere argued

---

4 FED. R. CIV. P. 56.
5 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
6 *Id.* at 248.
7 Coleman v. Hous. Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
8 Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
9 Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
10 Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
11 Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

existence of a factual dispute will not defeat an otherwise properly supported motion."[12]

**LAW AND ANALYSIS**

The McNair Defendants argue that Carlisle's state law malpractice claim is legally deficient for three reasons. First, they argue that there is no relationship between Carlisle's damages and the allegations of negligence made against the McNair Defendants. Second, they assert that there existed no patient-therapist relationship between McNair and Carlisle during the prescriptive period. And third, they aver that the only interaction McNair had with Carlisle was in McNair's official capacity with the Drug Court. Because the Court agrees with the McNair Defendants as to the first point, the Court need not assess the other two.

Let the Court be unmistakably clear: the only remaining claim against the McNair Defendants is a state law professional negligence claim.[13] Louisiana employs the duty-risk analysis to determine whether to impose liability under Louisiana Civil Code Article 2315.[14]

> Under this analysis plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to plaintiff, the requisite duty was breached by

[12] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[13] Doc. 178 at 26 ("All of Plaintiffs' § 1983 claims against [the McNair Defendants] . . . in their personal and official capacities, whether for injunctive or declaratory relief or damages, are DISMISSED *WITH PREJUDICE*.") (emphasis added); Doc. 231 at 4 ("At this point, the claims remaining in this action are as follows: 1) Plaintiff Carlisle's negligence claims against [the McNair Defendants] . . . ."); Doc. 545 at 2 ([T]he following claims remain: . . . 3. Plaintiff Carlisle's state law negligence claims against [the McNair Defendants] for actions taken after April 27, 2015.").

[14] Mathieu v. Imperial Toy Corp., 646 So. 2d 318, 321 (La. 1994).

> the defendant and the risk of harm was within the scope of protection afforded by the duty breached.[15]

"A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability."[16] The first determination in the duty-risk analysis is cause-in-fact.[17] A defendant's conduct is a cause-in-fact of the harm if it was a substantial factor in bringing about the harm. "For example, the act is a cause-in-fact in bringing about the injury when the harm would not have occurred without it."[18] "While a party's conduct does not have to be the sole cause of the harm, it is a necessary antecedent essential to an assessment of liability."[19]

Plaintiffs' Opposition Memorandum ("brief") is replete with arguments sounding in § 1983 claims. In fact, there are striking similarities between the arguments made in Plaintiffs' brief and Plaintiffs' allegations of § 1983 violations in the Second Amended Complaint. In that sense, Plaintiffs' brief is vexing. Additionally, much of Plaintiffs' brief makes allegations against the McNair Defendants without tying those allegations to any purported harm suffered by Carlisle. The Court has managed, however, to decipher the following allegations of harm from Plaintiffs' brief: (1) McNair's failures as Carlisle's counselor caused Carlisle to be demoted to Phase II in the Drug Court program; (2) the McNair Defendants cost Carlisle money by requiring him to "pay accrue and fees [sic];" (3) McNair caused Carlisle to be incarcerated in jail without medication; and (4) McNair

---

15 Berry v. State Through Dep't of Health & Human Res., 637 So. 2d 412, 414 (La. 1994) (citing Mundy v. Dep't of Health & Human Res., 620 So.2d 811, 813 (La.1993)).
16 Paul v. La. State Emps. Grp. Benefit Program, 762 So. 2d 136, 142 (La. App. 1 Cir. 2000) (citing *Mathieu*, 646 So. 2d at 326).
17 *Id.* (citing Boykin v. La. Transit Co., Inc., 707 So. 2d 1225, 1230 (La. 1998)).
18 *Id.*
19 *Id.* (citing Netecke v. State ex rel. DOTD, 747 So. 2d 489, 498 (La. 1999)).

caused Carlisle to be sent to Oxford House.[20] The Court will address each of Plaintiffs' asserted harms in turn.

**A. Demotion to Phase II**

Carlisle first asserts that "[d]ue to McNair's failures Carlisle was 'returned to Phase II three times.'"[21] Carlisle notes that "McNair never advised Carlisle in advance they were considering phasing him down and he was given no notice of a potential sanction. There was no rehabilitation related reason, or treatment related reason, he was phased back down to II."[22] These conclusory statements encompass the entirety of Plaintiffs' argument that McNair caused Carlisle to be demoted to Phase II. Plaintiffs provide this Court with no evidence whatsoever to support its claim. Accordingly, the Court finds that Plaintiffs fail to demonstrate a disputed issue of material fact as to the McNair Defendants' role in demoting Carlisle to Phase II.

**B. Accruing Fees**

Carlisle next asserts that he, "like all the participants, continued to pay accrue and fees [sic] because he was detained in the program, even when he was incarcerated."[23] Again, Plaintiffs fail to provide any evidence to suggest that the McNair Defendants played a role in requiring Drug Court participants to pay for and accrue fees. Accordingly, the Court finds that Plaintiffs fail to

---

[20] Doc. 556 at 16–18. To afford Plaintiffs the fairest consideration of their arguments, the Court also looked to Plaintiffs' Complaints for reference to damages suffered by Carlisle due to the McNair Defendants' actions. The Second Amended Complaint states that Carlisle's damages

> include limitations and deprivations of Carlisle's . . . liberty, freedom of association, and freedom of mover [sic] by virtue of the contempts; financial expense; reputational harm among members of the community; inability to transact business or obtain employment in the local area, inability to secure credit, mental anguish and loss of family.

Doc. 117 at 61–62.

[21] Doc. 556 at 16.

[22] *Id.*

[23] *Id.* at 17.

demonstrate a disputed issue of material fact as to the McNair Defendants' role in causing Carlisle's harm of being forced to pay Drug Court fees.

**C. Incarceration without Medication**

Carlisle next asserts that "McNair knew Carlisle was taking an anti-anxiety or antidepressant and never contacted him at the jail. He did not ask if Carlisle were [sic] receiving it while in jail. Despite numerous attempts to receive his medication while in jail during the six months [sic] sanction he never received it."[24] Assuming McNair had a duty to ensure that Carlisle was maintaining his medication regimen while in jail, Carlisle fails to provide any evidence that would make McNair culpable for this alleged harm. For example, Carlisle fails to demonstrate that McNair had the power to prescribe Carlisle his medications while he was incarcerated or that McNair could require jail officials to provide them to him. Accordingly, there is no dispute of material fact regarding McNair's role in causing Carlisle to remain incarcerated without medications.

**D. Oxford House**

Finally, Carlisle argues that he was forced to live at Oxford House "at McNair's direction."[25] Carlisle's own deposition testimony notes that Judge Faulkner ordered him to go to Oxford House.[26] McNair's deposition testimony notes that he had nothing to do with Judge Faulkner's decision to send Carlisle to Oxford House, and further, that he never made any recommendation for or against sending Carlisle to Oxford House.[27] Carlisle fails to point the Court to any evidence disputing these testimonies. Accordingly, there is no dispute of

[24] *Id.*
[25] *Id.*
[26] Doc. 554-4 at 13.
[27] Doc. 554-3 at 9.

material fact regarding McNair's involvement with Carlisle being ordered to go to Oxford House.

Having found that Plaintiffs failed to demonstrate a genuine dispute of material fact as to an essential element—cause-in-fact—of Carlisle's sole claim against the McNair Defendants, the Court need not engage in an analysis of the other elements.

## CONCLUSION

Accordingly, the McNair Defendants' Motion for Summary Judgment is **GRANTED**. Defendants Joe McNair, McNair & McNair, LLC, and Philadelphia Indemnity Insurance Company are hereby **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 23rd day of January, 2020.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**